**HEARING DATE AND TIME: October 13, 2016 at 10:00 a.m.**
**OBJECTION DEADLINE: October 6, 2016 at 5:00 p.m.**

Jil Mazer-Marino, Esq.
**MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**
990 Stewart Avenue, Suite 300
Garden City, New York  11530-9194
Telephone:  (516) 741-6565
Facsimile:  (516) 741-6706

*Attorneys for the Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:

BARRY'S AUTO BODY REPAIR, INC.,

                    Debtor.
-------------------------------------------------------x

Chapter 7

Case No. 15-10505 (SHL)

### TRUSTEE'S OBJECTION TO PROOF OF CLAIM FILED BY LENDERS CAPITAL, LLC (PROOF OF CLAIM NUMBER 5):  (A) RECLASSIFYING CLAIM AS AN UNSECURED CLAIM; (B) REDUCING THE AMOUNT OF THE CLAIM; (C) EQUITABLY SUBORDINATING THE CLAIM; OR, IN THE ALTERNATIVE, (D) DISALLOWING THE CLAIM

**TO THE HONORABLE SEAN H. LANE,**
**UNITED STATES BANKRUPTCY JUDGE:**

Jil Mazer-Marino, the chapter 7 trustee (the "**Trustee**") for the bankruptcy estate of

Barry's Auto Body Repair, Inc. (the "**Debtor**"), by her attorneys, Meyer, Suozzi, English &

Klein, P.C., for her objection (the "**Objection**") to Lenders Capital, LLC's proof of claim,

respectfully sets forth as follows:

### JURISDICTION

1.    This is a core proceeding over which this Court has jurisdiction pursuant to 28

U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Bankruptcy Cases to Bankruptcy

Judges of the United States District Court for the Southern District of New York.  Venue is

proper pursuant to 28 U.S.C. § 1409. The statutory predicate for the Motion is section 502 of title 11 of the United States Code (the "**Bankruptcy Code**").

## PRELIMINARY STATEMENT

2.      The Trustee is seeking to reduce and reclassify Proof of Claim Number 5 filed on behalf of Lenders Capital, LLC on the following grounds:

(a)      The Proof of Claim must be reclassified as an unsecured claim because Lenders Capital, LLC waived its security interests by failing to disclose its mortgage in the Involuntary Petition.

(b)      The Proof of Claim must be reduced from $1,017,522.27 to $535,000 and reclassified from a secured claim to an unsecured claim because Lenders Capital, LLC is judicially estopped from changing its position respecting the amount and classification of its claim as set forth in the Involuntary Petition.

(c)      The Proof of Claim must be equitably subordinated to other claims based on Lenders Capital, LLC's inequitable conduct, such as: (i) attempting to coerce the Debtor into selling the Property to it at a discount; (ii) attempting to manipulate this bankruptcy case to control the sale process apparently to steer the Property to itself or its preferred purchaser; (iii) charging default rate interest even though it agreed to waive the Debtor's defaults; and (iv) by engaging in dilatory tactics in this case that prejudiced other creditors of the estate.

(d)      The Claim must be reduced and reclassified because under New York General Obligations Law § 15-501, Lenders Capital, LLC elected to collect $535,000 on its Stipulation, which is an executory accord, and is barred from seeking to collect on the underlying note and mortgage.

3.     In the alternative, the claim must be disallowed and expunged because the loan underlying the claim is usurious under N.Y. Penal Law § 190.40.

## FACTS

### A.     The Property

4.     The Debtor owns real property improved by a 10,300 square foot industrial building located at 1932 Jerome Avenue, Bronx, New York (the "**Property**"). *See* Indenture, dated October 13, 2006, a copy of which is annexed as **Exhibit A** to the Declaration of Jil Mazer-Marino in Support of Trustee's Objection to the Proof of Claim filed by Lenders Capital, LLC (Proof of Claim No. 5) (hereinafter, the "**Dec.**").

5.     The Debtor is wholly owned by Barrington McLean. *See* Statement of Financial Affairs, a copy of which is annexed as **Exhibit B** to the Dec.

6.     Barrington McLean purchased the Property in 1982 and transferred the property to Concord Auto Body & Sales, Inc., his wholly owned company. *See* Indentures, dated January 4, 1982 and August 12, 1987, copies of which are annexed as **Exhibit C** to the Dec.

7.     On October 13, 2006, Concord Auto Body & Sales, Inc. conveyed the Property to the Debtor. *See* Indenture, a copy of which is annexed as **Exhibit A** to the Dec.

### B.     Lenders Capital, LLC and Joel Radmin

8.     Lenders Capital, LLC is in the business of making loans secured by real property. *See* Transcript of May 25, 2016 Deposition of Joel Radmin, (hereinafter "**Tr.**") at 25: 20-24; 26: 2-3, a copy of which is annexed as **Exhibit D** to the Dec.

9.     Joel Radmin ("**Radmin**") is a founder of Lenders Capital, LLC (Tr. 25: 11-19) and has been a partner or member of Lenders Capital, LLC since 2004. Since approximately 2009, Radmin has been a principal in Friedman Roth Realty LLC, which is a commercial real estate brokerage firm (Tr. 16: 17-24) and a principal of Brick Capital, which is primarily in the

business of originating mortgages on commercial grade and investment grade properties (Tr. 19: 9-25; 20: 2-14). Radmin is also a partner or member of between 35 and 40 entities that own real estate in New York City. Tr. 21: 14-24.

C.    **The Lenders Capital, LLC Mortgage, Note, and Guaranty**

10.    The Debtor is the obligor under a $375,000 Promissory Note (the "**Note**"), dated October 13, 2006 in favor of Lenders Capital, LLC. *See* Note, a copy of which is attached as **Exhibit E** to the Dec. The indebtedness under the Note is payable in twenty-four consecutive monthly installment of interest only at the rate of 13% per annum (i.e., $4,062.50 per month), which monthly interest payments were to commence on December 1, 2006 and conclude on November 30, 2008. *Id.* Thereafter the entire principal balance of the Note was to become due and payable. *Id.*

11.    The Note provides:

> If any portion of the Debt is not paid within ten (10) days after the date on which it is due, Maker shall pay to Payee upon demand an amount equal to five percent (5%) of such unpaid portion as a late payment charge.

Note at ¶ 4. The Note also provides:

> In addition to any late payment charge which may be due under this Note, if the Debt is declared immediately due and payable by Payee pursuant to the provisions of this Note, the Mortgage or the Security Agreement or if the Debt is not paid in full on the Maturity Date, Maker shall thereafter pay interest on the Principal Balance from the date of such declaration or the Maturity Date, as the case may be, until the date the Principal Balance is paid in full at a rate per annum equal to the lower of (i) twenty-four (24%) or (ii) the maximum interest rate which Maker may by law pay.

Note at ¶ 5.

12.    The Note is secured by a mortgage in favor of Lenders Capital, LLC, dated October 13, 2006 (the "**Mortgage**"). *See* Mortgage, a copy of which is attached as **Exhibit F** to the Dec.

13.     The indebtedness under the Note is secured by a Guaranty of Payment, dated October 13, 2006.  Barrington McLean is the Guarantor.  *See* Guaranty, a copy of which is attached as **Exhibit G** to the Dec.

**D.     Lenders Capital, LLC's Records Regarding Amounts Owed by the Debtors**

14.     Based on Lenders Capital, LLC's bookkeeping records, the Debtor made payments on the Note from October 17, 2006 through June 13, 2013 in the aggregate amount of $385,653.60, of which $346,503.94 is recorded as mortgage interest and $39,149.66 is recorded as real estate escrow taxes. *See Declaration of Gary R. Lampert, C.P.A. in Support of Trustee's Objection to Proof of Claim Filed by Lender's Capital LLC (Proof Of Claim Number 5):  (A) Reclassifying Claim as an Unsecured Claim;  (B) Reducing the Amount of the Claim;  (C) Equitably Subordinating the Claim; or, in the Alternative, (D) Disallowing the Claim*, dated August 25, 2016 filed contemporaneously herewith (the "**Lampert Dec.**") at ¶ 14.  An additional payment of $1,875.00 is recorded as mortgage points, which was paid from mortgage proceeds. *Id.* Lenders Capital, LLC's QuickBooks records reflect that the first payment of real estate taxes by Lenders Capital, LLC was not made until September 9, 2008; notwithstanding that the Debtor commenced payment of the real estate tax escrows on December 13, 2006. *Id* at ¶ 21.

15.     Based on Lenders Capital, LLC's bookkeeping records, the Debtor was making payments up until the Note's December, 2009 maturity date.  *Id* at Exhibit B. Thereafter, the Debtor continued to make payments to Lenders Capital, LLC until June 13, 2013 (*Id.*), which, as set forth below, is ten months after Lenders Capital, LLC commenced a foreclosure action against the Debtor.

16.     Based on Lenders Capital, LLC's general ledger, the balance of the Debtor's account as of March 5, 2015 is $216,996.97, which balance includes real estate escrow taxes that were billed to the debtor and other charges that appear to be related to another property and

erroneously linked to the Debtor's account. Lampert Dec. at ¶ 17. Lenders Capital, LLC's QuickBooks records do not indicate that it is owed default interest. To the Contrary, Lenders Capital, LLC's QuickBooks records include invoices that evidence that Lenders Capital, LLC was not charging default interest. Specifically, each invoice includes the note: "Terms: December 1, 2006 thru November 30, 2008, loan amount: $375,000 @13% for 2 years). *Id* at ¶ 12.

17. Furthermore, although Lenders Capital, LLC's QuickBooks records include invoices, Lenders Capital, LLC did not bother to send monthly invoices to the Debtor or provide the Debtor with written notice of default (except for the foreclosure complaint). Lenders Capital, LLC could not provide the date(s) upon which the Debtor went into default under the Note. (Tr. 57: 15-22).

18. Based on Lenders Capital, LLC's QuickBooks, it is owed no more than $499,834.50. Lampert Dec. at ¶ 27.

**E.    The Restructuring Under the Note**

19. Lenders Capital, LLC's books and records evidence that it entered into two restructuring agreements with the Debtor.

20. The first restructuring apparently occurred in or about November 2009. That agreement is evidenced by notations on the Invoices saved in Lenders Capital, LLC's QuickBooks. That notation states:

> As of 7/24/2009 – Joel and Barry agreed on the following: The amount of $8,012.50 will be due each month until the tax credit is satisfied. However, when payment is received, we will pay down the open tax bill by $1,000 until it is paid in full.   *The monthly mortgage of $8,012.50 does not include $38,000 in taxes that Lenders Capital, LLC paid on behalf of borrower in advance.

*See* Invoice, dated November 1, 2009 attached as part of Exhibit A to the Lampert Dec.  It is not clear that Lenders Capital, LLC made payments on the open tax bills even though the Debtor was making payments to Lenders Capital, LLC for the real estate escrow.

21.    The second restructuring occurred on or about August 20, 2012.  As part of that restructuring:  Lenders Capital, LLC agreed:  (a) the Mortgage balance was $465,000.00; (b) the Mortgage was current through August 31, 2012; (c) the interest rate was modified down to 12%; and (d) the first payment of interest for September was due October 1, 2012.  *See* Email from Joel Radmin to Eli Bronner, counsel for Lenders Capital, LLC, dated August 20, 2012 attached as **Exhibit H** to the Dec.

22.    On August 20, 2012, the same date as the e-mail confirming the restructuring, Debtor paid Lenders Capital, LLC $35,000.00.  *See* Receipt attached as **Exhibit I** to the Dec.

23.    Despite documentary evidence of the two restructurings, Lenders Capital, LLC denies those agreements exist.  *See* Tr. 62: 6-14 ("The only agreement we reached was in the stipulation"); Tr. 66: 8-16 (No, there were – there were never discussions about how to keep me on there as a lender. . . . So when you say restructure, . . . there could have been conversations where I would be patient, you know, longer, but, no, I wouldn't say there were conversations about restructuring.").

24.    Lenders Capital, LLC had no intention of restructuring the Note; rather, Radmin admits that Lenders Capital, LLC's objective was to own the Property.  *See* Tr. Tr.: 57: 10-16 ("I had a number of conversations with Barry to tell him he is going to lose everything if [he] doesn't get off his ass and sell the building."); Tr. 62: 21-25 ("there were times I offered him money for the deed."); Tr. 63: 20-21 ("even after the drop dead date came and went there were still negotiations or there were still conversations where I would give him some money [for the Property]"); Tr. 64: 18-1 ("I may have offered him as much as 150 grand"); Tr. 65: 7-11 (I would

give gave [sic] him 150 grand. We would shake hands and say good. I would own a building, and he would not walk away with nothing."). Lenders Capital, LLC continued to make offers for the Property until May 2015 – months after the commencement of this bankruptcy case. Tr. 65: 21-25. Lenders Capital, LLC commenced the bankruptcy case as a "quicker clean way to – to force a sale as a secured creditor." Tr. 70: 23-25.

**F.     The Foreclosure Action**

25.    It was Lenders Capital, LLC's practice not to commence a foreclosure action if a borrower was in default if the borrower was making partial payments. Tr. 40: 18-25; 41:2-13. Notwithstanding that the Debtor was making payments to Lenders Capital, LLC, on August 2, 2012, Lenders Capital, LLC filed a summons and complaint seeking to foreclose. *See* Summons and Complaint, attached as **Exhibit J** to the Dec.

26.    On or about April 5, 2013, Lenders Capital, LLC moved to enter a default judgment against the Debtor and for the appointment of a referee. *See* Notice of Motion, attached as **Exhibit K** to the Dec.

27.    On or about June 11, 2013, an Order of Reference was entered in the Supreme Court of the State of New York, County of Bronx. *See* Order, attached as **Exhibit L** to the Dec.

28.    In or about October, 2013, the Debtor moved by Order to Show Cause to set aside the default judgment and to dismiss the Summons and Complaint, based on, among other things that the summons and complaint had not been properly served. *See* Order to Show Cause, attached as **Exhibit M** to the Dec.

29.    On May 1, 2014, Judge Danziger rendered a decision on the Debtor's motion that granted Debtor's motion to the limited extent of ordering a traverse hearing. *See* Decision at 19, attached as **Exhibit N** to the Dec. In that same decision, the Court ordered all parties to appear

for a traverse hearing on June 30, 2014. *See Id* at 20. The traverse hearing was adjourned from time to time.

30.    On September 9, 2014, the Court "so ordered" a stipulation (the "**Stipulation**") in which the Debtor and Lenders Capital, LLC agreed that (a) on or before December 31, 2014, the Debtor shall pay Lenders Capital, LLC $535,000 in full satisfaction of all claims by Lenders Capital, LLC; (b) upon payment, Lenders Capital, LLC shall issue a satisfaction of mortgage or a mortgage assignment in recordable form at Debtor's option along with the original and deliver the original note, mortgage  and a stipulation of dismissal with prejudice and cancellation of the Lis Pendens; (c) in the event of a default in timely payment, that matter shall proceed to a [referee] [traverse][1] based on the decision of the Court dated May 1, 2014. *See* Stipulation, a copy of which is attached as **Exhibit O** to the Dec.

31.    The Debtor failed to make the $535,000 payment required by the Stipulation.

## G.    The Debtor's Bankruptcy Case

32.    On March 5, 2015, an Involuntary Petition for Relief under chapter 11 of the Bankruptcy Code was filed against the Debtor by Lenders Capital, LLC.  *See* Involuntary Petition, a copy of which is attached as **Exhibit P** to the Dec.  Lenders Capital, LLC is the sole petitioning Creditor.   Lenders Capital, LLC commenced the bankruptcy case because a foreclosure action would take years, bankruptcy would be a quicker way to resolve the issues, and it would be a quicker clean way to force a sale as a secured creditor. Tr. 70: 5-24.

33.    The Involuntary Petition for Relief is signed by Radmin, as managing member of Lenders Capital, LLC. *See* Involuntary Petition attached as **Exhibit P** to the Dec.  Radmin did not read the Involuntary Petition before he signed it. Tr. 105: 8-18.

---

[1] The handwriting in this part of the Stipulation is illegible and Trustee cannot determine if the Stipulation states that the matter shall proceed to a referee or to a traverse hearing pursuant to the decision of the Court dated May 1, 2014.

34.    The Involuntary Petition states that Lenders Capital, LLC's claim is in the nature of a "judgment" and is in the amount of $535,000. *See* Involuntary Petition.

35.    On April 15, 2015, this Court entered an order for relief under chapter 11 of the Bankruptcy Code. *See* Order for Relief and Order to File Schedules and Other Documents, Dkt. No. 7..

36.    On June 17, 2015, Lenders Capital, LLC moved for the appointment of a chapter 11 trustee for the Debtor's case. *See* Motion to Appoint Chapter 11 Trustee, Dkt. No. 13

37.    On July 1, 2015, the Office of the United States Trustee moved to appoint a chapter 11 trustee or, in the or in the alternative, for the conversion of the case to a case under chapter 7. *See* Notice of Motion, Dkt. No. 15.

38.    The Debtor's case was converted to a case under chapter 7 of the Bankruptcy Code by order of this Court dated July 30, 2015 and the next day, the Trustee was appointed the interim chapter 7 trustee for the Debtor. *See* Order Converting Chapter 11 Case to Case Under Chapter 7, Dkt. No. 22.

39.    On August 21, 2015 and September 1, 2015, the Court entered orders authorizing the Trustee to retain Gary R. Lampert CPA as accountant and MYC & Associates as real estate brokers. *See* Order Approving Retention of Gary R. Lampert, CPA as Accountant to the Chapter 7 Trustee, Dkt. 34 and Order Approving Trustee's Retention of MYC & Associates, Inc., Dkt. 36.

40.    In or about August or September, 2015, the Trustee, with the assistance of her professionals achieved an offer for the Property in excess of $1.3 million. *See* Dec.at ¶ 4.

41.    Notwithstanding that the Trustee and her professionals quickly obtained market rate offers for the Property and was were positioned to proceed to auction to maximize the value of the Property, on December 29, 2015, Lenders Capital, LLC moved to convert this chapter 7

case to a chapter 11 case. *See* Motion for an Order Converting This Chapter 7 Case to One under Chapter 11, Dkt. No. 44. On February 10, 2016, the Court entered an order denying Lenders Capital, LLC's motion to convert. *See* Order Denying Lender's Capital, LLC's Moton to Convert Chapter 7 Case to Chapter 11 case, Dkt. No. 54.

42.    On March 21, 2016, Lenders Capital moved to compel the Trustee to abandon the estate's interest in the Property, which motion was denied by this Court at the hearing held on April 12, 2016. *See* Motion to Compel Abandonment of the Property, Dkt. No. 64.

## H.    The Proof of Claim

43.    On April 5, 2016, Lenders Capital, LLC filed a proof of claim, identified on the claims register of this case as Proof of Claim Number 5 (the "**Proof of Claim**"). A copy of the Proof of Claim is attached as **Exhibit Q** to the Dec.

44.    The Proof of Claim is signed by Radmin. *See* Proof of Claim. Radmin did not read the Proof of Claim before he signed it. Tr. 111: 7-22.

45.    The Proof of Claim asserts a claim in the amount of $1,017,522.27 as of July 31, 2015 that is fully secured by the Mortgage.

46.    The Proof of Claim is inconsistent with Lenders Capital, LLCs books and records in that the Proof of Claim includes interest at the default rate commencing as of December 1, 2008, whereas Lenders Capital, LLC's QuickBooks and invoices do not reflect default rate interest at all. *See* Lampert Dec. at ¶ 12. Most importantly, Lenders Capital, LLC's QuickBooks disclose that it is owed no more than $499,834.50. *Id.* at ¶ 17.

47.    The Proof of Claim is inconsistent with the Involuntary Petition, which lists the claim as $535,000 as of the Petition Date and does not assert that the claim is secured.

## RELIEF REQUESTED

48.    By this motion, the Trustee seeks an order of this Court reducing the Proof of Claim to $535,000, reclassifying the Proof of Claim to an unsecured claim, and equitably subordinating the claim to all other claims in the case.  Alternatively, the Proof of Claim should be disallowed in full because the loan underlying the Proof of Claim is usurious.

## BASIS FOR RELIEF

**A.    Lenders Capital, LLC Waived its Security Interest in the Property by Failing to Disclose its Interest in the Involuntary Petition**

49.    The Involuntary Petition omits any reference to Lender's Capital's Mortgage or secured claim, therefore Lender's Capital waived its right to assert a secured claim in this case for any purpose.

50.    A petitioning creditor waives its security interest if it omits to mention the security in the petition.  *See* 1 *Collier Practice Guide* ¶ 14.06[3] at 14-24 (Matthew Bender 2007).  *Flori Pipe Co. v. Hale (In re Central Illinois Oil & Refining Co.)*, 133 F.2d 657, 658-659 (7th Cir. 1943) ("[I]t is not the fact of the filing of the involuntary petition in bankruptcy by a secured creditor that operated as a waiver. It is the filing of such a petition by a secured creditor who makes no mention of such security, that bars him.");  *Missco Homestead Ass'n, Inc. v. United States*, 185 F.2d 280, 282 (8th Cir. 1950) (United States waived security for claim by omitting mortgage in involuntary petition);  *Mount Vernon Hotel Co. v. Block*, 157 F.2d 637, 640 (9th Cir. 1946) ("mere filing of a petition in involuntary bankruptcy by a secured creditor who deliberately makes no mention of his security constitutes a waiver of that security");  *In re All Media Properties, Inc.*, 5 B.R. 126, 141 (Bankr. S.D.Texas 1980), *aff'd*, 646 F.2d 193 (5th Cir. 1981); ("Under the [Bankruptcy] Act, a party bringing an involuntary petition could waive its security by failing to mention the security in its petition. . . There is no apparent reason why this rule should not apply to cases brought under the Code.");  *cf. In re Automatic Typewriter &*

*Service Co.*, 271 F. 1 (2d Cir. 1921) (petitioning creditor with attachment may be petitioning creditor if preference is surrendered); *Greenville Banking & Trust Co. v. Selcow,* 25 B.R. 78, 79 (3d Cir. 1928) ("a person having a secured claim may join as a petitioning creditor and be one of the three to sustain the petition, if he surrenders his security before adjudication").

51.     Waiving security in the involuntary petition constitutes a waiver for all purposes in the case. *See* 2 *Collier on Bankruptcy* ¶ 303.03[2][c][ii] at 303-39 (15th Ed. Revised).

52.     *Flori Pipe v. Hale (In re Central Illinois Oil& Refinery Co.)*, 133 F2d 657 (7th Cir. 1943) is instructive on the issue of waiver.  In *Flori Pipe*, creditor sold equipment to debtor, as evidenced by a conditional sales contract.  *Id* at 657.  The debtor defaulted on the contract and creditor filed an involuntary petition without mentioning its security interest.  *Id* at 657-658. Dissatisfied with the bankruptcy referee's sale process, creditor sought to reclaim the equipment. *Id* at 659.  The referee objected to the reclamation motion on the grounds that creditor waived its lien by filing the involuntary petition without mentioning the lien and the equipment was not reclaimable because it was installed into the property and was no longer identifiable.  Id. at658. The Seventh Circuit Court of Appeals held that Flori waived its security interest in the equipment by failing to mention it in the involuntary petition.  In support of its holding the Court observed:

> It seems likely from the proceedings taken by appellant that [creditor] concluded it would benefit little by a reclamation of its conditionally sold merchandise, but would perhaps gain through a bankruptcy proceeding where the property could be operated as a going concern. After the sale was had and $7,000 realized [which was insufficient to pay creditor in full], [creditor] decided to press its pending reclamation petition, although it had not opposed a sale, free of liens.

*Id* at 659.  In this Case, Lenders Capital, LLC contends it filed the Involuntary Petition to force an expeditious sale of the Property.  Tr. 70:  23-25.  Like the creditor in *Flori*, only when Lenders Capital, LLC did not achieve the result it desired did it assert its rights as a secured

creditor by asserting a secured claim. Therefore, as in *Flori*, this Court should hold that Lenders Capital, LLC also waived its security interest.

53.     Lenders Capital, LLC did not refer to a security interest in the Involuntary Petition and the reference to "Judgment" in the Involuntary Petition is not and cannot be a reference to a security interest for at least two reasons.

54.     First, Lenders Capital, LLC did not have a judgment against the Debtor when it filed the Involuntary Petition. Lenders Capital, LLC has incorrectly asserted that the Stipulation is a judgment that was docketed in Bronx Supreme Court and constitutes a lien on the Debtor's real property in the Bronx pursuant to N.Y. C.P.L.R. § 5018(a). *See* Reply of Lenders Capital, LLC in Support of Motion to Compel the Trustee to Abandon the Estate's Interest in Real Estate, or, in the Alternative, to Direct that a Prompt Auction be Held, at ¶ 6 filed April 7, 2016 [Dkt. No. 69]. Pursuant to N.Y. C.P.R. § 2104, a stipulation, whether docketed or not, is construed as an enforceable contract and not a judgment. *See Ailvaliotis v. Continental Broker Dealer*, 30 A.D.3d 446 (2d Dep't 2006) ("A so-ordered stipulation is a contract between the parties"); *Fox Ridge Motor Inn v. Southeast*, 85 A.D.3d 785 (2d Dep't 2011) (same); *Poughkeepsie v. Black*, 130 A.D.2d 541 (2nd Dep't 1987).

55.     In order for Lenders Capital, LLC to have obtained a judgment based on the Debtor's breach of the Stipulation, Lenders Capital, LLC would have had to have made a motion in the foreclosure action to enforce the terms of the Stipulation. *See Republic Leasing Co. v. 112 7th Ave.*, 22 A.D.3d 231 (1st Dep't 2005) (Following breach of stipulation, plaintiff was not required to commence a plenary action to enforce the stipulation of settlement, the stipulation in this case contemplated re-opening the matter for the court to enter a judgment upon a parties' breach.); *Crecca v. Narofsky*, 41 A.D.3d 216 (1st Dep't 2007) (Stipulation required parties to enter a stipulation of discontinuance or enter a judgment terminating the action, neither of which

occurred. Court retained jurisdiction to hear motion to enforce the terms of the stipulation). Lenders Capital, LLC did not do so and no judgment has been entered against the Debtor in favor of Lenders Capital, LLC, whether based on the Stipulation or otherwise.

56.    Second, Lenders Capital, LLC did not intend for the word "Judgment" to mean secured claim in the Involuntary Petition. Lenders Capital, LLC did not prepare the Involuntary Petition and Radmin did not read the Involuntary Petition before he signed it. Tr. 104:19 – 106:18. Therefore, Lenders Capital, LLC could not have formed any intent respecting the inclusion of the word "Judgment" in the Involuntary Petition.

57.    Third, a finding that Lender's Capital, LLC waived its secured claim is required under applicable law and is fair and appropriate. It would be inequitable for Lender's Capital, LLC actively to enlist the aid of the Bankruptcy Court under the pretense of being an unsecured creditor and then insist on receiving the protections afforded a fully secured creditor that is involuntarily subjected to the bankruptcy process. This is especially true considering: (a) Lender's Capital, LLC elected to proceed in this forum notwithstanding it was prosecuting a state court foreclosure action; (b) Lender's Capital, LLC is the only petitioning creditor and was solely responsible for bringing the Debtor into this Court; (c) an order for relief could not have been entered in this case unless Lender's Capital, LLC was an unsecured creditor; (d) the Debtor has other secured and unsecured creditors whose rights will be prejudiced if Lenders Capital, LLC's claims are treated as secured claims; (e) Lenders Capital, LLC never amended its Involuntary Petition to mention its security interests; and (f) Lenders Capital, LLC chose to proceed in Bankruptcy Court to "force a sale" of the Property (Tr. 70:16-24).

**B.    Lenders Capital, LLC is Judicially Estopped from Asserting a Secured Claim in the Amount $1.2 Million**

58.    Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."

*New Hampshire v. Maine*, 532 US 742, 749 (2001) (quoting *Pelgram v. Herdrich*, 530 US 211, 227 n8 (2000). The purpose of judicial estoppel is "to protect the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment . . . Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion." *Id.* at 750. (internal quotation marks and citation omitted).

59.    In *Adelphia Recovery Trust v. HSBC Bank USA, NA (In re Adelphia Recovery Trust)*, 634 F3d 678, 696 (2d Cir. 2011), the Second Circuit Court of Appeals set forth the test for when judicial estoppel would apply:

> "Typically, judicial estoppel will apply if: 1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." Id., 595 F.3d at 103 (quoting New Hampshire, 532 U.S. at 750-51, 121 S. Ct. 1808). The third requirement is sometimes couched in terms of "unfair detriment [to] the opposing party" rather than advantage to the party to be estopped. New Hampshire, 532 U.S. at 751, 121 S.Ct. 1808. In this circuit, moreover, "[w]e further limit 'judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain.'" DeRosa, 595 F.3d at 103 (quoting Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 148 (2d Cir.2005)). This latter requirement means that judicial estoppel may only apply where the earlier tribunal accepted the accuracy of the litigant's statements. See Simon v. Safelite Glass Corp., 128 F.3d 68, 72 (2d Cir.1997).

60.    Lenders Capital, LLC initially asserted in the Involuntary Petition that it holds an unsecured claim in the amount of $535,000 that is in the nature of a "judgment." *See* Involuntary Petition. Thereafter, Lenders Capital, LLC asserted in its proof of claim that it holds a claim in the amount of $1,017,522.27 that is fully secured by a mortgage. *See* Proof of Claim.

61.    Lenders Capital, LLC is judicially estopped from changing its position claim (i.e., changing the amount and character of its claim) because all of the elements of judicial estoppel are satisfied and equity so demands.

62.    First, Lenders' Capital, LLC's position is clearly inconsistent with its earlier position. Lenders Capital, LLC initially asserted its claim was unsecured. That is evident by the fact that there is no mention of the Mortgage in the Involuntary Petition, and, as set forth above, the reference to "Judgment" cannot be interpreted as an assertion of a secured claim.

63.    Second, Lenders Capital, LLC's position was previously adopted by this Court as evidenced by the fact that this Court entered an order of relief based on the position set forth by in the Involuntary Petition, that is, based on the position that Lenders Capital, LLC had a judgment against the Debtor and not a secured claim.

64.    Third, Lenders Capital, LLC's position operates to the detriment of the Debtor's estate and creditors in several respects. If Lenders Capital, LLC is not judicially estopped from changing its position, the estate would have no ability to pay other secured and unsecured creditors. Creditors would be worse off than if no bankruptcy case had been commenced because the automatic stay prevented other creditors from enforcing their interests. Creditors would be further prejudiced because Lenders Capital, LLC's motion to convert the case back to chapter 7, motion to compel abandonment, and dilatory discovery tactics caused substantial delay in the case resulting in additional real estate tax liens on the Property.

65.    Moreover, if Lenders Capital, LLC is not judicially estopped from changing its position, other secured creditors could be incentivized to commence involuntary petitions, enlist the services of a trustee and her professionals, and, if the results are not suitable, in essence, take the collateral back. The Trustee, in reasonable reliance on Lenders Capital, LLC's statement in the Involuntary Petition, that its claim was unsecured: retained a real estate broker to market the Property; retained counsel to negotiate the sale, drafted a sale contract and motion papers seeking approval of a sale; and retained an accountant to determine the tax consequences of any sale. Only after the Trustee and her professionals invested time and resources to obtain a highly

competitive offer did Lenders Capital, LLC change its position in an attempt to veto the
Trustee's sale of the Property.

66.    Based on the foregoing, Lenders Capital, LLC should be judicially estopped from
asserting its claim is secured and this Court should reclassify the Proof of Claim as an unsecured
claim in the amount of $535,000.00.

## C.    Lenders Capital, LLC's Liens and Claims Should be Equitably Subordinated Based on its Conduct

67.    This Court should subordinate Lenders Capital, LLC's claims based on its
prepetition and postpetition inequitable conduct. The equitable subordination doctrine empowers
a bankruptcy court to consider whether, "notwithstanding the apparent legal validity of a
particular claim, the conduct of the claimant in relation to other creditors is or was such that it
would be unjust or unfair to permit the claimant to share pro rata with the other claimants of
equal status." *LightSquared LP v. SP Special Opportunities LLC (In re LightSquared)*, 511 B.R.
253, 346 (Bankr. S.D.N.Y. 2014) (quoting *In re Adler, Coleman Clearing Corp.*, 277 B.R. 520,
563 (Bankr. S.D.N.Y. 2002). As stated by the Court in LightSquared:

> [F]or this Court to exercise its power of equitable subordination, three conditions must be
> satisfied: (i) "[t]he claimant must have engaged in some type of inequitable conduct; (ii)
> [t]he misconduct must have resulted in injury to the creditors of the bankrupt or conferred
> an unfair advantage on the claimant; and (iii) [e]quitable subordination of the claim must
> not be inconsistent with the provisions of the Bankruptcy Act.

*Id* (internal citations and quotations omitted).    In determining whether those conditions are
satisfied, a court should consider the following:

> First, inequitable conduct directed against the debtor or its creditors may be sufficient to
> warrant subordination of a claim irrespective of whether it was related to the acquisition
> or assertion of that claim. Second, a claim or claims should be subordinated to the extent
> (and only to the extent) necessary to offset the harm which the debtor and its creditors
> suffered on account of the inequitable conduct. And third, an objection resting on
> equitable grounds must contain some substantial factual basis to support its allegation of
> impropriety. Id.

*Id* (internal citations and quotations omitted).

68.    Lenders Capital, LLC engaged in the following inequitable conduct that caused harm to the Debtor, its estate and creditors:

- Lenders Capital, LLC induced the Debtor into believing that the Note had been restructured and default interest was not accruing.  As a result, the Debtor continued making payments to Lenders Capital, LLC, including a lump sum payment of $35,000.  However, when the Debtor rejected Lenders Capital, LLC's offers to purchase the Property at a discount, Lenders Capital, LLC prosecuted a foreclosure action; notwithstanding the Debtor was making payments to Lenders Capital, LLC.

- Lenders Capital, LLC is misusing the bankruptcy court as a short cut to the foreclosure process.  Lenders Capital, LLC admits it commenced this bankruptcy case to force a sale of the Property because it was faster than proceeding in state court and duped this Court into believing it was seeking an order for relief as an unsecured creditor.

- Lenders Capital, LLC intended to manipulate the bankruptcy process to permit it or its preferred purchaser (perhaps one of Radmin's 35 to 40 ventures that hold real property in New York City) to purchase the Property.  In that connection, when the Trustee found a purchaser willing to pay market price for the Property, Lenders Capital, LLC asserted that it was secured and that its claim was over a $1 million such that there would be no unencumbered assets to pay administrative expenses.  The assertion of the $1 million claim is egregious because Lenders Capital, LLC's own books and records indicate that less than $500,000 was due and owing as of the March 5, 2015 petition date.  Subsequently, Lenders Capital, LLC moved to convert the case back to chapter 11 in order to control the sale

process, notwithstanding the Trustee's sale process was underway and she obtained an offer for the Property that was at or above market. After the motion was denied, Lenders Capital, LLC moved to compel the Trustee to abandon the Property or conduct an expedited auction, notwithstanding an expedited auction was unlikely to maximize sale values. Lenders Capital, LLC's actions are extensions of its improper attempts to coerce the Debtor to sell the Property to Lenders Capital, LLC at a deep discount.

- Lenders Capital, LLC delayed producing documents responsive to this Court's order entered under Bankruptcy Rule 2004, failed to produce all responsive documents, and failed to designate a witness with knowledge regarding the scope of the topics under investigation by the Trustee, and delayed production of its books and records. That delayed this case and caused additional real estate tax liens and administrative expenses to accrue.

- Lenders Capital, LLC acted inequitably in originating and servicing this loan. Barrington McLean, the sole owner and officer of the Debtor is elderly and does not appear to be a sophisticated business person. Lenders Capital, LLC did not send a default notice when the Debtor defaulted, did not provide the Debtor with invoices, did not send statements to the Debtor apprising the Debtor that Lenders Capital, LLC was charging interest at the default rate of 24% plus a late fee of 5%. Instead, Lenders Capital, LLC continued to take payments from the Debtor until it, effectively, was repaid almost the full principal amount of the loan and then pressured the Debtor to convey the Property to it for less than fair value.

**D.**    **Lenders Capital, Elected Under NY G.O.L. 15-501 to Pursue its Claim on the
Stipulation and is Barred from Collecting under the Note and Mortgage.**

69.    N.Y. General Obligations Law15-501 states:

> 1. Executory accord as used in this section means an agreement
> embodying a promise express or implied to accept at some future time a
> stipulated performance in satisfaction or discharge in whole or in part of
> any present claim, cause of action, contract, obligation, or lease, or any
> mortgage or other security interest in personal or real property, and a
> promise express or implied to render such performance in satisfaction or
> in discharge of such claim, cause of action, contract, obligation, lease,
> mortgage or security interest.

*    *    *

> 3. If an executory accord is not performed according to its terms by one
> party, the other party shall be entitled either to assert his rights under the
> claim, cause of action, contract, obligation, lease, mortgage or other
> security interest which is the subject of the accord, or to assert his right
> under the accord.

70.    The Stipulation is an executory accord governed by NY GOL 15-501 because the

Stipulation is an agreement embodying a promise to accept at some future point a stipulated

performance in satisfaction of a present obligation – that is, the Stipulation embodies Lenders

Capital, LLC's promise to accept $535,000 from the Debtor in satisfaction of all amounts owed

by the Debtor and Guarantor under the Note, Mortgage and Guaranty.  Under NY GOL 15-501,

upon Debtor's Default under the Stipulation, Lenders Capital, LLC was entitled to enforce its

claims under the Note, Mortgage and Guaranty OR assert its rights under the Stipulation.  NY

GOL 15-501 does not permit the non-breaching party to recover on both the underlying

obligation and the accord.  In this case, Lenders Capital, LLC elected to pursue its rights based

on the Debtor's default under the Stipulation by filing the Involuntary Petition based on the

$535,000 amount due under the Stipulation instead of prosecuting its claims under the Note and

Mortgage.  Accordingly, Lenders Capital, LLC is precluded from seeking to recover the debt on

the underlying Note, Mortgage and Guaranty.

71.     Based on the foregoing, Lenders Capital, LLC's claim should be reduced, reclassified and fixed as an unsecured claim in the amount of $535,000, which is the claim set forth in the Stipulation.

**E.      Lenders Capital, LLC's Liens and Claims Should be Disallowed and the Payments it Received Disgorged due to Usury.**

72.     N.Y. Penal Law Section 190.40, states:

A person is guilty of criminal usury in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period.

73.     Lenders Capital, LLC's loan to the Debtor is usurious.  The Note reserves an illegal rate of interest because the 24% default rate of interest together with the 5% late charge exceeds the 25% legal rate of interest.  That Lenders Capital, LLC knowingly charged an illegal rate of interest is evidenced not only by the Note but by the Proof of Claim filed with this Court that shows Lenders Capital, LLC's  is charging for the late fee on top of the default rate of interest.

74.     The loan is usurious notwithstanding that paragraph 5 of the Note purports to cap interest at "the maximum interest rate which Maker may by law pay." *See Bakhash v. Winston*, 19 N.Y.S. 3d 887 (App. Div. 1st Dept. 2015) ("[T]he note says, 'in no event shall the rate of interest payable hereunder exceed the maximum interest permitted to be charged by applicable law.'  However, that does not make the subject note nonusurious."); *Fred Schultzman Co. v. Park Slope Advanced Medical, PLLC*, 128 A.D.3d 1007, 9 N.Y.S.3d 682, 683 (App. Div. 2d Dept. 2015) ("a clause in the subject promissory note purporting to reduce the rate of interest to a non-usurious rate if the rate originally imposed was found to be usurious could not save the note from being usurious"); *Simsbury Fund Inc. v. New St. Louis Associates*, 204 A.D.2d 182, 611 N.Y.S.2d 557 (App. Div. 1st Dept. 1994) ("We also agree with the IAS court that the possibility

of a nonusurious rate of interest in the event of defendant's full performance under the agreements, and language therein purporting to reduce the interest rate to the legal rate in the event of a finding of usury, do not make the subject agreements nonusurious.").

75.    Holding that default interest does not violate New York's criminal usury statute would permit lenders to evade that statute easily. Even a loan shark could evade the criminal usury statute by lending money at a non-usurious rate that jumped to a usurious rate after a default that the lender knew was very likely to occur (*e.g.*, failing to repay the loan with interest in an unreasonably short period of time).

### NOTICE

76.    Notice of this motion has been provided to Lenders Capital, LLC.

### CONCLUSION

**WHEREFORE,** it is respectfully requested that the Court enter an order substantially in the form annexed hereto as Exhibit "A," reducing, reclassifying and equitably subordinating the Proof of Claim, and for such other and further relief as the Court deems just.

Dated:    **Garden City, New York**
        **August 26, 2016**

**MEYER, SUOZZI, ENGLISH & KLEIN P.C.**
*Attorneys for the Chapter 7 Trustee*

By: */s/ Jil Mazer-Marino*
     **Jil Mazer-Marino, Esq.**
  **990 Stewart Avenue, Suite 300**
  **Garden City, New York 11530-9194**
  **Phone:  (516) 741-6565**
  **Email:  jmazermarino@msek.com**

1121144

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

In re:                                                          Chapter 7


BARRY'S AUTO BODY REPAIR, INC.,                                 Case No. 15-10505 (SHL)

                        Debtor.


-------------------------------------------------------x

## ORDER RECHARACTERIZING, REDUCING AND SUBORDINATING PROOF OF CLAIM NUMBER 5 FILED ON BEHALF OF LENDERS CAPITAL, LLC

Upon the *Trustee's Objection to Proof of Claim Filed by Lender's Capital, LLC (Proof Of Claim Number 5): (A) Reclassifying Claim as an Unsecured Claim; (B) Reducing the Amount of the Claim; (C) Equitably Subordinating the Claim; or, in the Alternative, (D) Disallowing the Claim* [Dkt. No. __] (the "**Claim Objection**"), filed on behalf of Jil Mazer-Marino, the chapter 7 trustee for the above captioned debtor (the "**Debtor**"); and upon the record of the hearing (the "**Hearing**") on the Claim Objection; and upon the record of this case; and good and sufficient notice of the Claim Objection and the Hearing having been given and no other or further notice being required; and sufficient cause appearing therefor, it is

**ORDERED**, that the Claim Objection is granted to the extent set forth herein; and it is further

**ORDERED**, that Proof of Claim No. 5 (the "Claim") filed as a secured claim in the amount of $1,017,522.27 is hereby reduced and reclassified and allowed as an unsecured claim in the amount of $535,000; and it is further

**ORDERED,** that the claim is subordinated to all other allowed claims and allowed administrative expenses in this case.

Dated: New York, New York
    October __, 2016

_____
HON. SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

2

1135931